UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Elaine Braxton, as natural parent and Guardian on behalf of D.N<br><br>Plaintiff(s)<br><br>v.<br><br>Clark County School District, et al.,<br><br>Defendant(s). | 2:23-cv-00144-JAD-MDC<br><br>**Report and Recommendation** |

On June 5, 2024, the Court heard defendants' *Motion To Disqualify Counsel* (ECF No. 61) ("Motion"). Defendants seek the disqualification of plaintiffs' counsel, H&P Law firm, because H&P Law hired the school district's Assistant General Counsel, Fikisha Miller, Esq., to assist in this matter. The Court has considered the related briefs, argument of counsel, and for cause appearing, recommends that defendants' Motion be GRANTED IN PART for the following reasons:

**I.  BACKGROUND**

Plaintiffs Elaine Braxton and her minor child, D.N. bring this case against Clark County School District ("CCSD") and multiple CCSD employees asserting allegations of abuse against D.N. On February 20, 2024, H&P Law hired Fikisha Miller, Esq., who was then assigned to assist in this matter. Ms. Miller previously served as CCSD's Assistant General Counsel, Chief Negotiator from November 2020 through November 2021. (ECF No. 61 at 2:25-27). Immediately after she was assigned to this case, Ms. Miller reached out to defendants' counsel to coordinate depositions. Ms. Miller's prior employment with CCSD was then raised during those discussions. Defendants asserted that Ms. Miller was conflicted from representing the plaintiffs because Ms. Miller had worked on matters relevant to this action while employed by CCSD. In sum, defendants allege that Ms. Miller counseled CCSD regarding some of the policies and statutes at issue in this action. Plaintiffs argue that Ms. Miller was

1

simply a transactional attorney with CCSD with no involvement in litigation or the matters at issue here. Ms. Miller represents that she was employed as Chief Negotiator for CCSD, and her primary responsibilities were negotiating and drafting third-party contracts and advising the School Board regarding the same. Plaintiffs further argue that Ms. Miller's employment with CCSD predated the events of this action and that Ms. Miller had no knowledge of and was not involved in any of the conduct regarding plaintiff D.N. giving rise to their claims.

The parties conferred about their dispute regarding Ms. Miller prior to seeking the Court's intervention. Defendants requested plaintiffs to screen Ms. Miller off this matter as the resolution to the conflict that defendants claim exists. Plaintiffs denied any conflict existed and rejected defendants' request, which prompted defendants to file their Motion. Plaintiffs, however, agreed to screen Ms. Miller off this matter pending resolution of defendants' Motion. Moreover, Ms. Miller and Ms. Marjorie L. Huff, Esq. both represented during the June 5, 2024, hearing that Ms. Miller has had no substantive involvement in this matter. The only action taken by Ms. Miller was contacting defendants' counsel to discuss deposition dates.

In their Motion, defendants now seek the entire disqualification of H&P Law instead of their prior proposal to plaintiffs for Ms. Miller to be screened off this matter.

## II.     ANALYSIS

### A.     Legal Standards

Disqualification motions are, "subjected to particularly strict judicial scrutiny." *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988) (*quoting Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985). "Disqualification of counsel is a drastic measure which courts should hesitate to impose except when absolutely necessary." *FLS Trans. Servs., Inc. v. Casillas*, 3:17-cv-0013-MMD-VPC, 2017 WL 6043611, *3 (D. Nev. Dec. 6, 2017). The party seeking disqualification has a "high standard of proof to meet in order to prove that counsel should be disqualified." *Id*. (internal quotation omitted).

Disqualification motions are decided under state law. *In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000). The Nevada Rules of Professional Conduct ("NRPC") provide that:

> [a] A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

*See* NRPC 1.9.

With respect to lawyers who were former government employees, NRPC 1.11 provides in relevant part:

> (a)  Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government:
> (1)  Is subject to Rule 1.9(c); and
> (2)  Shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.
> (b)  When a lawyer is disqualified from representation under paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
> (1)  The disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;

*Id.*

Nevada Rules of Professional Conduct (NRPC) 1.10(a) provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." *Id.*  An exception exists if the lawyer (i) "did not have a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9," (ii) "is timely screened from any participation in the matter and is apportioned no part of the fee therefrom, and (iii) timely written notice is given to the former client. *See* NRPC 1.10(e).  Pursuant to NRPC 1.10(a), "an attorney's disqualification under RPC 1.9 is imputed to all other attorneys in that disqualified attorney's law firm.  However, a disqualified attorney's law firm

may nevertheless represent a client in certain circumstances if screening and notice procedures are followed." *New Horizon Kids Quest III, Inc. v. Eighth Jud. Dist. Ct.*, 133 Nev. 86, 89, 392 P.3d 166, 169 (2017).

The Nevada Supreme Court held that the party seeking disqualification must establish "(1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are substantially related, and (3) that the current representation is adverse to the party seeking disqualification." *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct.*, 123 Nev. 44, 50, 152 P.3d 737, 741 (2007)(emphasis added). LR IA 11-7 (a) provides that, "[a]n attorney admitted to practice under any of these rules must adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as these standards may be modified by this court." *Id.*

Attorneys are prohibited from attacking their own work product. *See Restatement (Third) of the Law Governing Lawyers* §132(1) & cmt. d(ii) (2000) (prohibiting attorneys from attacking their own prior work even if no confidential information would be compromised in doing so). Not all conflicts result in disqualification. Courts should consider the circumstances of each case and whether lesser sanctions are appropriate remedies.

> The discretion courts have to determine whether the specific facts of a case warrant a sanction short of disqualification is broad…it is not obligated to disqualify that lawyer merely because he has run afoul of the applicable ethical rules. The court is encouraged instead to examine the specific facts and circumstances peculiar to the individual case to decide whether disqualification, or some lesser sanction, would be an appropriate remedy. In other words, even when counsel has been shown to have committed an ethical rule infraction the court retains discretion to decline to order disqualification, and, in many cases, courts have done just that.

*UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1062 (C.D. Cal. 2007)(*citing* Richard E. Flamm, *Lawyer Disqualification: Conflicts of Interest and Other Bases § 23.1 at 443–45* (Banks and Jordan, 2003)).

Courts are also entitled "to deny a disqualification motion on condition that the attorney or firm in question comply with certain limitations. This is because a court's authority to disqualify an attorney or craft appropriate relief to punish or deter attorney misconduct derives from the court's equitable powers." *T1 Payments LLC v. Beyond Wealth PTE LLC*, No. 22-CV-01405-JCM-VCF, 2020 WL 8836069, at *3 (D. Nev. Dec. 23, 2020), *report and recommendation adopted sub nom. TI Payments LLC v. Beyond Wealth Pte LLC*, 2021 WL 408089 (D. Nev. Feb. 5, 2021)(*quoting* Geoffrey C. Hazard, Jr. & W. William Hodes*, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct § 4.7*, at 4-22 (Aspen, 3d ed. 2007) (disqualification motions "invoke the equitable powers of the court, and when successful result in an order that is in effect an injunction. Hence…a motion for disqualification is governed by … equitable principles…and a balancing of the equities. This helps explain why courts sometimes deny relief on motion for disqualification, even when there is clear proof of violation of a rule of professional conduct.").

**B.     Screening Ms. Miller Is The Appropriate Remedy**

The material source demonstrating a conflict of interest is a December 13, 2020, memorandum ("12/31/20 Memo") by Ms. Miller to CCSD General Counsel, Luke Pusching (ECF No. 63-3) (submitted in camara and sealed)[1]. In the 12/31/20 Memo, Ms. Miller provided counsel and analysis regarding the Individuals with Disabilities Education Act (IDEA) and Section 504 and Americans with Disabilities Act (ADA) vis-à-vis students with disabilities.  Those topics are at issue in the present action.  While the context prompting the 12/31/20 Memo does not concern plaintiff D.N. directly, some of analysis and advice is substantially related to plaintiffs' broad reaching allegations and claims.  For example, D.N. is a student with disabilities and plaintiffs' fifth cause of action exposes CCSD to liability

---

[1] Asserting attorney-client privilege, defendants filed the 12/31/20 Memo (ECF No. 63-3) under seal for in camara review by the Court.  Ms. Miller was able to generally address the 12/31/20 Memo during the June 5, 2024, hearing on defendants' Motion.

5

under Individuals with Disabilities Education Act (IDEA) and Section 504 and Americans with Disabilities Act (ADA).  *See* Plaintiffs' Third Amended Complaint at ECF No. 51, ¶¶88-154.

Thus, a narrow conflict exists regarding plaintiffs' IDEA and Section 504 claims because Ms. Miller had an attorney-client relationship with CCSD, against whom she is now adverse, and her 12/31/20 Memo was substantially related the IDEA and Section 504 matters at issue in this action.  *See Nevada Yellow Cab Corp.,* 123 Nev. at 50, 152 P.3d at 741.

Prior to filing their Motion, defendants agreed and proposed that plaintiffs screen Ms. Miller from this matter as an acceptable and proper resolution to the conflict.  In their Motion, however, defendants changed course and requested an imputed and outright disqualification of all of plaintiffs' counsel, H&P Law.  During the June 5, 2024, hearing defendants represented that the only reason why they changed their minds was "the passage of time."  Defendants agreed there were no new facts or law changing the circumstances of their initial proposal to screen Ms. Miller. After the benefit of briefing and considerable oral argument, plaintiffs also conceded to continue screening Ms. Miller from this action as an agreed remedy.

The Court also agrees that screening Ms. Miller is the appropriate remedy.  Ms. Miller has no substantive involvement in the matter and was promptly screened after the conflict issue was raised (following Ms. Miller's discussions with defendants about scheduling depositions).  Disqualification of all H&P Law attorneys from this matter is not appropriate or necessary.  Indeed, disqualification of counsel is a drastic measure, that is subject to high judicial scrutiny. *Shurance*, 839 F.2d at 1348; *FLS Trans. Servs., Inc.*, 2017 WL 6043611, *3.

//
//
//
//
//

**RECOMMENDATION**

ACCORDINGLY,

**IT IS RECOMMENDED that:**

A. Defendants' *Motion To Disqualify Counsel* (ECF No. 61) be GRANTED IN PART and that plaintiff shall continue to screen Ms. Fikisha Miller, Esq., from any participation in the above-captioned matter and is apportioned no part of the fee therefrom.

B. Defendants' *Motion To Disqualify Counsel* (ECF No. 61) be DENIED IN PART in all other aspects.

C. Plaintiffs' request for fees included at the end of their response (ECF No. 67) to defendants' motion be DENIED.

DATED:  June 6, 2024.

IT IS SO RECOMMENDED.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge